UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



————————————————————

YOUSSOUPH FANE,

Petitioner,

v.                                                    26-CV-322 (JLS)

PHILIP RHONEY, *in his official
capacity as Acting Deputy Field Office
Director*; MARKWAYNE MULLIN, *in
his official capacity as Secretary of
Homeland Security*; TODD LYONS, *in
his official capacity as Acting Director
of Immigration and Customs
Enforcement*; and TODD BLANCHE, *in
his capacity as Acting Attorney General
of the United States*,

Respondents.[1]

————————————————————

## DECISION AND ORDER

This Court has examined the Second Circuit's recent decision in *da Cunha v.
Freden*, --- F. 4th ---, 2026 WL 1146044 (2d Cir. Apr. 28, 2026).  To the extent the
holding therein conflicts with this Court's decisions in *Rivera Castillo v. Rhoney*, No.
25-CV-1065 (JLS), 2026 WL 775995 (W.D.N.Y. Mar. 19, 2026), and *Ferreira Candido
v. Bondi*, No. 25-CV-867 (JLS), 2025 WL 3123696 (W.D.N.Y. Nov. 7, 2025), this Court
is bound to follow the Second Circuit's *da Cunha* dictates.  The balance of this Court's

———————————————

[1] The caption has been updated pursuant to Federal Rule of Civil Procedure 25(d).

analysis in *Rivera Castillo* and *Ferreira Candido* bears reference and is incorporated here.

As relevant to the case now before this Court, in *da Cunha*, the Second Circuit ruled that:

1. "A noncitizen like [da Cunha] is unlawfully present, and thus an 'applicant for admission,' but indisputably *never sought* or applied for lawful entry after inspection and authorization, and is not doing so now.  To the contrary, he evaded immigration inspectors, snuck into the country, and today applies only for non-admission forms of relief, including asylum and cancellation of removal." *da Cunha*, 2026 WL 1146044, at *7 (citation modified).

2. "Here, although [da Cunha] is an applicant for admission under the statutory definition because he is present in the country and has never been admitted, it simply cannot be said that he is 'seeking admission,' as he is not requesting lawful entry into the United States.  By total contrast, [da Cunha] entered the interior unlawfully twenty years ago and is now seeking only relief from removal.  Therefore, because Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,' it does not apply to [da Cunha]." *Id.* at *6.

3. "Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and

2

admission, *and who were not apprehended while entering the country or shortly thereafter.*" *Id.* at *2 (citation modified).

4. "Together, Section 1225(b)(2) therefore applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization." *Id.* at *6.

5. "Instead, Section 1225(b)(2)(A) applies to those noncitizens who present themselves at a port of entry for admission, *or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry.'*" *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (holding that a noncitizen "apprehended just 25 yards from the border" had not effected an "entry"), and citing *Leng May Ma v. Barber*, 357 U.S. 185, 189 (1958) (treating noncitizens paroled into the country "as [if] stopped at the boundary line")) (citation modified).

. . .

In *da Cunha*, the Second Circuit drew a distinction between aliens who "snuck into" the country and "evaded" detection for years (ruling that a bond hearing is required) and aliens who were encountered at or near the border (where no bond hearing is required).

3

Here, Petitioner is in the latter category.  *See* Dkt. 1-3 at 5. (Petitioner is a citizen of Senegal and was encountered near Quitobaquito and Monument Hill near Lukeville, Arizona and border patrol agents determined that Petitioner had entered the United States unlawfully).  In particular, he was apprehended as part of a group of 48 individuals.  *See id.*

As such, under *da Cunha*, "Section 1225(b)(2)(A) applies to those noncitizens [like Petitioner here] who present themselves at a port of entry for admission, *or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry.'*"  *da Cunha*, 2026 WL 1146044, at *6 (citation modified).

Petitioner indeed was "seeking admission" into the United States when he entered and was first encountered by government agents.  He was at or near the border intending to enter and remain here.  He has voluntarily remained since (until the commencement of his current detention), thereby continuing to "seek" admission to the United States.  How could it be otherwise?  If he were not so seeking admission, he would have given up and departed already and, certainly, would have so departed after his release on parole.

In addition, the "entry fiction" doctrine, which treats petitioners the same way now, under the Constitution, as when they were first encountered, is in accord.  *See da Cunha*, 2026 WL 1146044 at *15 (citing *Thuraissigiam*); *see also Thuraissigiam*, 591 U.S. at 139–40; *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648 (S.D.N.Y. 2018) (same, as to a petitioner stopped at the border and paroled into the country).

For the reasons stated above, Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A) and, therefore, is not entitled to a bond hearing. Thus, Respondents' motion to dismiss is granted, and the petition is denied.

The Clerk of Court shall close this case.

SO ORDERED.

Dated:     May 19, 2026
           Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

5